IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. TEAM SYSTEMS INTERNATIONAL, LLC<br><br>       Plaintiff<br><br>vs.<br><br>1. JEFF HAOZOUS, ALSO KNOWN AS JEFF HOUSER, INDIVIDUALLY, AND IN REPRESENTATIVE CAPACITIES;<br><br>2. FORT SILL APACHE BUSINESS COMMITTEE;<br><br>3. FORT SILL APACHE INDUSTRIES BOARD OF DIRECTORS;<br><br>4. FORT SILL APACHE INDUSTRIES;<br><br>AND<br><br>5. THE FORT SILL APACHE CASINO, NOW KNOWN AS APACHE CASINO HOTEL AND/OR APACHE HOMELAND CASINO;<br><br>       Defendants | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. CIV-14-1018-D |

PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Team Systems International, LLC, Plaintiff, files this its Plaintiff's Original Complaint herein complaining of Defendants Jeff Haozous, Also Known As Jeff Houser, Individually and in his various representative capacities as described hereinbelow; the Fort Sill Apache Business Committee; the Fort Sill Apache Industries Board of Directors; the Fort Sill Apache Casino, Now Known As Apache Casino Hotel and/or Apache Homeland Casino; and Fort Sill Apache Industries, and would respectfully show the Court as follows:

## I. PARTIES.

1. Plaintiff Team Systems International, LLC (hereinafter "TSI") is a Delaware limited liability company with its principal offices in Reston, Virginia.

2. Defendants Jeff Haozous, Also Known as Jeff Houser (hereinafter sometimes "Houser"), is joined herein in his Individual capacity and also in his capacities as Chairman or President of other "Fort Sill" Defendants (sometimes hereinafter "Fort Sill Defendants")named herein; the Fort Sill Apache Business Committee; the Fort Sill Apache Industries' Board of Directors; the Fort Sill Apache Casino, Now Known As Apache Casino Hotel and/or Apache Homeland Casino; and Fort Sill Apache Industries (hereinafter sometimes "FSAI"), which entities have been organized under the tribal laws of Fort Sill Apache Tribe of Oklahoma with principal offices and place of business at Route 2, Box 121, Apache, Oklahoma, 73006. At all times material to this cause, FSAI was sometimes called a "corporation" but actually it was but an instrumentality of the Fort

Sill Apache Business Committee and its Board of Directors, and it was formed by internal actions of the Fort Sill Apache Tribe and its Tribal Council. Whenever it is said that FSAI acted or did certain acts, in reality it was Houser, and/or the Fort Sill Business Committee, in one capacity or another as identified herein. Accordingly, the Fort Sill Apache Business Committee, the Fort Sill Apache Industries' Board of Directors, the Fort Sill Apache Casino (in any name derivation), and Houser, are joined herein as Defendants as the alter egos of FSAI and of each other, and each named Defendant (sometimes hereinafter referred to collectively as "Fort Sill Defendants") may be served with process herein by serving, Jeff Haozous, also known as Jeff Houser, in his individual capacity and as Chairman and President or agent of the named entities, at 43187 US Hwy 281, Apache, Oklahoma 73006, or wherever else he may be found.

## II. JURISDICTION & VENUE.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the action is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Houser, FSAI, and the other Defendants reside and at all times material hereto did reside in the State of Oklahoma. The Engagement Agreement which forms the basis of this suit includes an Oklahoma choice of law provision and permits venue in the United States District Court for the Western District of Oklahoma.

## III. FACTUAL BACKGROUND.

5.  This is an action to recover monetary damages and other appropriate relief brought about by FSAI's breach of a written contract with the Plaintiff. TSI brings suit against FSAI for its nonpayment of percentage continency compensation for securing financing and introducing a strategic partner on FSAI projects. On or about August 1, 2005, TSI's principal Deborah Evans Mott and FSAI, through Don Wauahdooah, then president of FSAI, entered into an Engagement Agreement with two primary purposes: 1) to provide accounting service and software use; and 2) to engage in project business development on behalf of FSAI. A true and correct copy of the contract is attached as Exhibit "A" and incorporated herein by reference. The Engagement Agreement was approved by the Fort Sill Business Committee and the Board of Directors of FSAI. TSI had a particular expertise in governmental contracts which FSAI desperately needed in order to pass a pre-award audit on a Navy contract. Because of this expertise in government contracting, TSI also had the connections to create teaming agreements with primary contractors for the performance of these government contracts. Thus, TSI could provide both the accounting services necessary to retain current contracts and the project business development necessary to bring in new contracts.

6.  In conjunction with the project development work, FSAI agreed to pay "contingent compensation" to TSI upon securing financing for an FSAI project or introducing a strategic partner for a project. Exhibit "A," Appx. I. The Engagement

Agreement states that TSI is to be paid 250 basis points (2.5%) of the amount of any financing. Similarly, FSAI agreed to pay TSI 300 basis points (3%) for the amount of transactions if FSAI reached an agreement with a strategic partner that TSI developed.

7. After signing this agreement, TSI began work on both components of the contract. Ultimately in 2007, FSAI secured a two-phase construction contract at Fort Lee in Virginia with the United States Army Corp of Engineers (hereinafter the "Fort Lee Project"). The total value of the Fort Lee Project was in excess of $50 million. The award of this contract, however, was contingent upon securing payment and performance bonds for the total value of the project. TSI worked with Marsh USA, Inc., a surety company, to issue the bonds. TSI's work on the bonds included finding a surety willing to issue the bonds and drafting the underwriting memorandum to the surety. TSI also continued in ongoing negotiations to ensure that the bonds from Phase 1 could be continued to Phase 2 of the project, which had a much higher total contract value. In total, TSI's efforts resulted in approximately $60 million in payment and performance bonds, without which the Fort Lee Project could not have been performed. Thus, TSI secured financing for FSAI on the Fort Lee project and is entitled to contingent compensation calculated at 2.5% of the total amount of the bonds or approximately $1.2 million.

8. Similarly, TSI courted Phillips & Jordan, Inc. (hereinafter "P&J") as the primary subcontractor on the entire Fort Lee Project. Specifically, TSI met with the vice-president of construction for P&J and introduced him to FSAI. P&J ultimately checked

the project references of TSI before accepting the business because FSAI could not provide references for the length time or in the quantity P&J desired. TSI also created a risk mitigation strategy including a draft underwriting memo which P&J used to secure their bond package. As a result of TSI's work, P&J entered into a lump sum contract totaling more than $8 million for Phase 1 of the Fort Lee Project, and a $31 million contract for Phase 2. Although the Phase 1 and Phase 2 Subcontracts are not part of this cause, the value of the contracts is offered to demonstrate the degree to which the P&J partnership with FSAI was essential to the success of the Fort Lee Project and to support TSI's damages calculations. Thus, TSI introduced FSAI to its strategic partner P&J and is entitled to compensation calculated at 3% of the total amount of FSAI's contracts with P&J or approximately $1.17 million.

9. Under this Fort Lee Project, TSI also had two contracts with FSAI for contract management and finance administration. These duties were separate and apart from its ongoing obligations under the Engagement Agreement. The relationship between FSAI and TSI turned contentious rather unexpectedly in the summer of 2009, compelling TSI to terminate the hereinabove referenced Phase 1 and Phase 2 Subcontracts. FSAI also breached the Engagement Agreement (Exhibit "A") in several material respects including by unilaterally changing TSI's bank account access leaving TSI without financial and accounting information essential to its performance of the Engagement Agreement and making it unable to perform its tasks under the Engagement Agreement. TSI notified

FSAI of the termination of the Engagement Agreement for cause in its attorney's letter of September 25, 2009. See Exhibit "B" attached hereto and incorporated herein by reference. TSI alleges upon information and belief that FSAI, Houser, and the other Fort Sill Defendants engaged in these actions so as to create or force the termination of the Engagement Agreement shortly before it would have expired naturally in order to try to avoid paying TSI its just compensation. Also, FSAI did not provide information or an authorized representative to work with TSI as required under the Engagement Agreement. Consistent with Paragraph 6.3.2 of the Engagement Agreement compensation for additional services and all services provided was due at that the time of termination. Ex. A. Although FSAI breached the Engagement Agreement, thereby necessitating TSI's termination of the same, FSAI failed to remit payment for the contingency fees as set forth above. TSI's subcontracts on the Fort Lee Project included arbitration provisions, and the parties' disputes related to those agreements were the subject of a proceeding before the American Arbitration Association.[1]

10. In addition to TSI's extensive work on the Fort Lee Project (which direct work is not the subject of this litigation, having been covered by the aforementioned Arbitration), TSI worked on other potential projects on behalf of FSAI. TSI also secured a payment and performance bond totaling $25 million on a Multiple Award Task Order

---

[1] That arbitration, however, was recently terminated by the American Arbitration Association because FSAI refused to pay or make all advance deposits as it had been ordered to do by the United States District Court in Virginia.

Contract for Fort Bliss. FSAI was awarded the contract which was to be performed by FSAI after TSI terminated its Engagement Agreement. Thus, TSI secured financing for FSAI on the Fort Bliss project and is entitled to contingent compensation calculated at 2.5% of the total amount of the bonds or approximately $625,000.

## IV. BREACH OF CONTRACT

11. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1- 10 as if fully set forth herein.

12. FSAI and TSI entered into a valid and enforceable contract on August 1, 2005, to wit the Engagement Agreement. TSI fully performed its work under the Engagement Agreement by providing the services agreed to. TSI secured financing, in the form of payment and performance bonds, on two FSAI projects. TSI also introduced a strategic partner for FSAI in connection with its performance of the Fort Lee Project. FSAI breached the Engagement Agreement by failing to pay "contingent compensation" associated with such success. FSAI's failure to perform was not excused nor was it waived by TSI. FSAI's breach has directly caused actual damages to TSI in the amount of 2.5% of each payment and performance bond secured on the Fort Lee Project, 2.5% of the payment and performance bond secured on the Fort Bliss Project, and 3% of the total subcontracts with P&J. TSI's total damages are an estimated $2,995,000.

13. TSI also seeks to recover its attorney's fees associated with this claim. A prevailing party can recover attorney's fees for a matter involving payment for services

rendered. 12 Okl. St. Ann. § 936. Therefore, upon success on this claim, TSI is entitled to its attorney's fees.

## V. SOVEREIGN IMMUNITY WAIVED.

14. The Defendants have waived any rights to sovereign immunity they may otherwise have had.

## VI. CONTROL GROUP.

15. Whenever in this pleading it is alleged that any Defendant did any act or thing, it is meant that all Defendants, their officers, directors, agents, servants, employees, or representatives did such act or thing and that, at the time such act or thing was done, it was done with all Defendants' full knowledge, whether actual or implied, authorization, and ratification, or that it was done in the normal and ordinary course and scope of employment or other duties of their officers, directors, agents, servants, employees, or representatives and with actual or apparent authority.

## VII. ALTER EGOS.

16. Historically, and certainly at all times material to this cause, the Fort Sill Defendants have operated FSAI, the Fort Sill Apache Business Committee, and the Fort Sill Apache Casino merely as instrumentalities and alter egos of each other, failing to maintain any meaningful separation among them. This has included Jeff Houser individually, as well as other members of the Fort Sill Apache Business Committee and Fort Sill Apache Industries Board of Directors not individually named as Parties herein.

17. In support of this claim, the Plaintiff will show at trial that the Fort Sill Defendants regularly and consistently maintained common officers and directors, that Jeff Houser was the titular head of all of the entities and ran them without regard to corporate separation, that they frequently commingled funds and accounts, as well as operations, and they utilized the funds of one for the debts or trade acquisitions of another, often with no corresponding accounting entries, and that there generally was such a blurring of all of their identities that separate entities simply did not exist or function. In one instance, just for purposes of amplifying these allegations, Houser and the other Fort Sill Defendants diverted some $12,000,000 to $15,000,000 in funds provided by the United States to the Fort Sill Apache Tribe and used the funds to (i) purchase a $2,500,000 or so letter of credit for FSAI and (ii) expended the balance on renovations to the Fort Sill Apache Casino.

18. Furthermore, the Fort Sill Apache Casino was operated by the Fort Sill Defendants much like children would operate a lemonade stand in the front yard of their home, meaning that there were lax and fluid accounting standards and practices, and little or no controls, which enabled the Defendants to tap its rich accounts for various and sundry needs. The accounts and funds of the Fort Sill Apache Casino, therefore, should be and are available to satisfy any recovery by TSI in this cause.

### VIII. ATTORNEY'S FEES.

19. Under Oklahoma law, as noted hereinabove, the Plaintiff is entitled to

recover its attorneys fees in a breach of contract dispute. Plaintiff, therefore, hereby sues for its attorneys fees and costs.

## IX. PRAYER.

WHEREFORE, PREMISES CONSIDERED, Team Systems International, LLC, Plaintiff, prays that Defendants be served with process and ordered to appear and answer herein, and that upon final hearing or trial of this matter the Court enter judgment against the Defendants, jointly and severally, for the following relief:

a. 2.5% of the total amount of the payment and performance bonds on the Fort Lee Project;

b. 2.5% of the total amount of the payment and performance bond on the Fort Bliss Contract;

c. 3% of the total amount of Defendant's contracts with Phillips & Jordan on the Fort Lee Project.

d. Attorney's fees;

e. Pre- and Post-Judgment interest as allowed by law;

f. Costs of Court; and

g. All other relief at law or equity to which Plaintiff may show itself justly entitled.

Respectfully submitted,

COKINOS, BOSIEN & YOUNG

BY:    */s/ Michael B. Lee*
      GREGORY M. COKINOS
      Bar No. 04527250
      Gmcokinos@cbylaw.com
      MICHAEL B. LEE
      Bar No. 12129500
      OBA No. 14-139
      mlee@cbylaw.com
      Four Houston Center
      1221 Lamar Street, 16th Floor
      Houston, Texas 77010-3039
      713.535.5500 Tel.
      713.535.5533 Fax

ATTORNEYS FOR TEAM SYSTEMS
INTERNATIONAL, LLC

OF COUNSEL
MULINIX, OGDEN, HALL & LUDLAM, PLLC
ARMANDO ROSELL
OBA No. 18821
rosell@lawokc.com
3030 Oklahoma Tower
210 Park Avenue
Oklahoma City, Oklahoma 73102
405.232.4800 Tel
405.232.8999 Fax