IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. TEAM SYSTEMS INTERNATIONAL, LLC<br><br>Plaintiff | § | |
| v. | § | CIVIL ACTION NO. CIV-14-1018-D |
| 1. JEFF HAOZOUS, ALSO KNOWN AS JEFF HOUSER, INDIVIDUALLY, AND AS PRESIDENT OF FORT SILL APACHE INDUSTRIES AND CHIEF EXECUTIVE OFFICER OF FORT SILL APACHE INDUSTRIES BOARD OF DIRECTORS<br><br>2. FORT SILL APACHE INDUSTRIES BOARD OF DIRECTORS AS MANAGERS OF FORT SILL APACHE INDUSTRIES<br><br>3. FORT SILL APACHE INDUSTRIES<br><br>Defendants | § | |

PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Team Systems International, LLC, Plaintiff, files this its Plaintiff's Second Amended Original Complaint herein complaining of Defendants Jeff Haozous, Also

Known As Jeff Houser, Individually and in his capacities as President of Fort Sill Apache Industries and Chief Executive Officer of Fort Sill Apache Industries Board of Directors; the Fort Sill Apache Industries Board of Directors as Managers of Fort Sill Apache Industries; and Fort Sill Apache Industries, and would respectfully show the Court as follows:

## I. PARTIES.

1. Plaintiff Team Systems International, LLC (hereinafter "TSI ) is a Delaware limited liability company with its principal offices in Reston, Virginia.

2. Defendants Jeff Haozous, Also Known as Jeff Houser (hereinafter sometimes "Houser ), is joined herein in his Individual capacity and also in his capacities as President of Fort Sill Apache Industries and Chief Executive Officer of the Fort Sill Apache Industries Board of Directors; the Fort Sill Apache Industries' Board of Directors as Managers of Fort Sill Apache Industries; and Fort Sill Apache Industries (hereinafter sometimes "FSAI ), a business entity organized under the tribal laws of Fort Sill Apache Tribe of Oklahoma with principal offices and place of business at Route 2, Box 121, Apache, Oklahoma, 73006. At all times material to this cause, FSAI was sometimes called a "corporation and it was formed as a business entity by internal actions of the Fort Sill Apache Tribe and its Tribal Council. As such, FSAI is considered to be a citizen of Oklahoma for diversity purposes. See Gaines v. Ski Apache, 8 F.3d 726, 729 (10th Cir.

1993).[1] Accordingly, the Fort Sill Apache Industries' Board of Directors, as Managers of Fort Sill Apache Industries and Fort Sill Apache Industries itself may be served with process herein by serving, Jeff Haozous, also known as Jeff Houser (hereinafter sometimes "Houser ), and he himself is also joined both individually and in the capacities hereinabove stated, at 43187 US Hwy 281, Apache, Oklahoma 73006, or wherever else he may be found.

II. JURISDICTION & VENUE.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the action is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. TSI is a limited liability company chartered in Delaware with its principal place of business in Virginia, and its members are citizens of the States of Florida, Virginia, Maryland, and Texas. No member is a citizen of Oklahoma. Deborah E. Mott, principal member, is a citizen of Florida. Defendant Jeff Haozous, sued herein in his individual capacity, is a citizen of Oklahoma. The Fort Sill Apache Industries Board of Directors is joined herein as Managers of Fort Sill Apache

---

[1] Although the Court in Apache Ski found against diversity and, therefore, found that it lacked subject matter jurisdiction, it did so because the facts of that case were that the Mescalero Tribe itself operated the ski resort in question, not a business entity which had been formed by the Tribe. Those facts are clearly distinguishable from the facts in this dispute, and the principle of law for which Apache Ski is cited, that a business entity created by an Indian Tribe is treated as a corporation for purposes of determining diversity jurisdiction, stands. 8 F.3d at 729.

Industries. All Defendants are, therefore, citizens of the State of Oklahoma for diversity purposes. FSAI, an entity created under tribal law, is the equivalent of a corporation created under state or federal law for diversity purposes and thus shall be analyzed for diversity jurisdiction purposes as if it were a state (Oklahoma) or federal corporation. See Gaines v. Ski Apache, 8 F.3d 726, 729 (10th Cir. 1993); see also Wells Fargo Bank, Nat. Ass n v. Lake of the Torches Economic Development Corporation, 658 F.3d 684, 693 (7th Cir. 2011); Cook v. AVI Casino Enters., Inc., 548 F.3d 718, 723 (9th Cir. 2008). FSAI is, therefore, an Oklahoma citizen for these purposes and complete diversity exists. Furthermore, Defendant FSAI contractually submitted to the jurisdiction and venue of this Court in the contract made the subject of this cause, that being the Engagement Agreement attached hereto as Exhibit "A. See also the "Amendments to the Fort Sill Apache Industries (also called "Ordinances ) approved as of May 2003 (attached hereto as Exhibit "B and incorporated herein by reference), particularly Sections 1-020.A-B, 1-030, 1-050.C, 1-070, 1-140, 1-160, 1-170.A-C, and 1-180 thereof. In particular Section 1-020 creates FSAI and authorizes it to do business, Section 1-030 declares FSAI's need for the development of economic and industrial activities within the jurisdiction of the Fort Sill Apache Tribe of Oklahoma (emphasis added), Section 1-170 establishes that FSAI may sue and be sued, including being sued as a party to a contract which would include the contract made the subject of this cause, and Section 1-180 sets FSAI's "General Powers. The Constitution and By Laws of the Fort Sill Apache Tribe of Oklahoma (attached hereto

as Exhibit “C and incorporated herein for all purposes) further establishes the Fort Sill Apache Tribe as an Oklahoma domiciled Tribe, which it was at all times material to this cause. Although it is not a Party to this cause, the Oklahoma domicile of the Tribe further evidences the status of FSAI as an Oklahoma tribal created entity with its principal business and business offices located in the State.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c)(2) because Houser, FSAI, and the Board of Directors all reside and at all times material hereto did reside or conduct business in the State of Oklahoma and FSAI’s principal place of business was in Oklahoma at all material times. The Engagement Agreement which forms the basis of this suit includes an Oklahoma choice of law provision and permits venue in the United States District Court for the Western District of Oklahoma. This Court, therefore, has jurisdiction over the subject matter and Parties of this dispute, and venue is proper here.

## III. FACTUAL BACKGROUND.

5. This is an action to recover monetary damages and other appropriate relief brought about by FSAI’s breach of a written contract with the Plaintiff. TSI brings suit against FSAI for its nonpayment of percentage continency compensation for securing financing and introducing a strategic partner on FSAI projects. On or about August 1, 2005, TSI's principal Deborah Evans Mott and FSAI, through Don Wauahdooah, then president of FSAI, entered into an Engagement Agreement with two primary purposes: 1) to provide accounting service and software use; and 2) to engage in project business

development on behalf of FSAI. A true and correct copy of the contract is attached as Exhibit "A and incorporated herein by reference. The Engagement Agreement was approved by the Fort Sill Business Committee and the Board of Directors of FSAI. TSI had a particular expertise in governmental contracts which FSAI desperately needed in order to pass a pre-award audit on a Navy contract. Because of this expertise in government contracting, TSI also had the connections to create teaming agreements with primary contractors for the performance of these government contracts. Thus, TSI could provide both the accounting services and software necessary to retain current contracts and the project business development necessary to bring in new contracts.

6. In conjunction with the project development work, FSAI agreed to pay "contingent compensation to TSI upon securing financing for an FSAI project or introducing a strategic partner for a project. Exhibit "A, Appx. I. The Engagement Agreement states that TSI is to be paid 250 basis points (2.5%) of the amount of any financing. Similarly, FSAI agreed to pay TSI 300 basis points (3%) for the amount of transactions if FSAI reached an agreement with a strategic partner that TSI developed.

7. After signing this agreement, TSI began work on both components of the contract. Ultimately in 2007, FSAI secured a two-phase construction contract at Fort Lee in Virginia with the United States Army Corp of Engineers (hereinafter the "Fort Lee Project ). The total value of the Fort Lee Project was in excess of $50 million. The award of this contract, however, was contingent upon securing payment and performance bonds

for the total value of the project. TSI worked with Marsh USA, Inc., a surety company, to issue the bonds. TSI's work on the bonds included finding a surety willing to issue the bonds and drafting the underwriting memorandum to the surety. TSI also continued in ongoing negotiations to ensure that the bonds from Phase 1 could be continued to Phase 2 of the project, which had a much higher total contract value. In total, TSI's efforts resulted in approximately $60 million in payment and performance bonds, without which the Fort Lee Project could not have been performed. Thus, TSI secured financing for FSAI on the Fort Lee project and is entitled to contingent compensation calculated at 2.5% of the total amount of the bonds or approximately $1.2 million.

8. Similarly, TSI courted Phillips & Jordan, Inc. (hereinafter "P&J ) as the primary subcontractor on the entire Fort Lee Project. Specifically, TSI met with the vice-president of construction for P&J and introduced him to FSAI. P&J ultimately checked the project references of TSI before accepting the business because FSAI could not provide references for the length time or in the quantity P&J desired. TSI also created a risk mitigation strategy including a draft underwriting memo which P&J used to secure their bond package. As a result of TSI's work, P&J entered into a lump sum contract totaling more than $8 Million for Phase 1 of the Fort Lee Project, and a $31 Million contract for Phase 2. Although the Phase 1 and Phase 2 Subcontracts are not part of this cause, the value of the contracts is offered to demonstrate the degree to which the P&J partnership with FSAI was essential to the success of the Fort Lee Project and to support TSI's

damages calculations. Thus, TSI introduced FSAI to its strategic partner P&J and is entitled to compensation calculated at 3% of the total amount of FSAI's contracts with P&J or approximately $1.17 million.

9. Under this Fort Lee Project, TSI also had two contracts with FSAI for contract management and finance administration. These duties were separate and apart from its ongoing obligations under the Engagement Agreement. The relationship between FSAI and TSI turned contentious rather unexpectedly in the summer of 2009, compelling TSI to terminate the hereinabove referenced Phase 1 and Phase 2 Subcontracts. FSAI also breached the Engagement Agreement (Exhibit "A ) in several material respects including by unilaterally changing TSI's bank account access leaving TSI without financial and accounting information essential to its performance of the Engagement Agreement and making it unable to perform its tasks under the Engagement Agreement. TSI notified FSAI of the termination of the Engagement Agreement for cause in its attorney's letter of September 25, 2009. See Exhibit "D attached hereto and incorporated herein by reference. TSI alleges upon information and belief that FSAI, Houser, and the Fort Sill Apache Industries Board of Directors, as Managers, engaged in these actions in bad faith so as to create or force the termination of the Engagement Agreement shortly before it would have expired naturally in order to try to avoid paying TSI its just compensation. Also, FSAI did not provide information or an authorized representative to work with TSI as required under the Engagement Agreement. Consistent with Paragraph 6.3.2 of the

Engagement Agreement compensation for additional services and all services provided was due at that the time of termination. Ex. "A. Although FSAI breached the Engagement Agreement, thereby necessitating TSI's termination of the same, FSAI failed to remit payment for the contingency fees as set forth above. TSI's subcontracts on the Fort Lee Project included arbitration provisions, and the parties' disputes related to those agreements were the subject of a proceeding before the American Arbitration Association.[2]

10. In addition to TSI's extensive work on the Fort Lee Project (which direct work is not the subject of this litigation, having been covered by the aforementioned Arbitration), TSI worked on other potential projects on behalf of FSAI. TSI also secured a payment and performance bond totaling $25 million on a Multiple Award Task Order Contract for Fort Bliss. FSAI was awarded the contract which was to be performed by FSAI after TSI terminated its Engagement Agreement. Thus, TSI secured financing for FSAI on the Fort Bliss project and is entitled to contingent compensation calculated at 2.5% of the total amount of the bonds or approximately $625,000.

## IV. BREACH OF CONTRACT

11. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1- 10 as if fully set forth herein.

---

[2] That arbitration, however, was recently terminated by the American Arbitration Association because FSAI refused to pay or make all advance deposits as it had been ordered to do by the United States District Court in Virginia.

12. FSAI and TSI entered into a valid and enforceable contract on August 1, 2005, to wit the Engagement Agreement. TSI fully performed its work under the Engagement Agreement by providing the services agreed to. TSI secured financing, in the form of payment and performance bonds, on two FSAI projects. TSI also introduced a strategic partner for FSAI in connection with its performance of the Fort Lee Project. FSAI breached the Engagement Agreement by failing to pay "contingent compensation associated with such success. FSAI's failure to perform was not excused nor was it waived by TSI. FSAI's breach has directly caused actual damages to TSI in the amount of 2.5% of each payment and performance bond secured on the Fort Lee Project, 2.5% of the payment and performance bond secured on the Fort Bliss Project, and 3% of the total subcontracts with P&J. TSI's total damages are an estimated $2,995,000.

13. TSI also seeks to recover its attorney's fees associated with this claim. A prevailing party can recover attorney's fees for a matter involving payment for services rendered. 12 Okl. St. Ann. § 936. Therefore, upon success on this claim, TSI is entitled to its attorney's fees.

## V. SOVEREIGN IMMUNITY WAIVED.

14. The Defendants have waived any rights to sovereign immunity they may otherwise have had. See Engagement Agreement (Exhibit "A ), Sec. 7.5.

## VI. CONTROL GROUP.

15. Whenever in this pleading it is alleged that any Defendant did any act or thing, it is meant that all Defendants, their officers, directors, agents, servants, employees, or representatives did such act or thing and that, at the time such act or thing was done, it was done with all Defendants' full knowledge, whether actual or implied, authorization, and ratification, or that it was done in the normal and ordinary course and scope of employment or other duties of their officers, directors, agents, servants, employees, or representatives and with actual or apparent authority.

## VII. ALTER EGOS.

16. Historically, and certainly at all times material to this cause, Houser and the Fort Sill Apache Industries Board of Directors, Managers, have operated FSAI and the Board of Directors merely as instrumentalities and alter egos of each other, failing to maintain any meaningful separation among them. This has included Jeff Houser individually and in his official capacities set forth herein, as well as members of the Fort Sill Apache Industries Board of Directors.

17. In support of this claim, the Plaintiff will show at trial that the Fort Sill Defendants regularly and consistently maintained common officers and directors, that Jeff Houser was the titular head of all of the entities and ran them without regard to corporate separation, that they frequently commingled funds and accounts, as well as operations, and they utilized the funds of one for the debts or trade acquisitions of another, often with no

corresponding accounting entries, and that there generally was such a blurring of all of their identities that separate entities simply did not exist or function. In one instance, just for purposes of amplifying these allegations, Houser and the Fort Sill Apache Industries Board of Directors diverted some $12,000,000 to $15,000,000 in funds provided by the United States to the Fort Sill Apache Tribe and used the funds to (i) purchase a $2,500,000 or so letter of credit for FSAI and (ii) expended the balance on renovations to the Fort Sill Apache Casino.

## VIII. ATTORNEY'S FEES.

18. Under Oklahoma law, as noted hereinabove, the Plaintiff is entitled to recover its attorneys fees in a breach of contract dispute. Plaintiff, therefore, hereby sues for its attorneys fees and costs.

## IX. PRAYER.

WHEREFORE, PREMISES CONSIDERED, Team Systems International, LLC, Plaintiff, prays that Defendants be served with process and ordered to appear and answer herein, and that upon final hearing or trial of this matter the Court enter judgment against the Defendants, jointly and severally, for the following relief:

a. 2.5% of the total amount of the payment and performance bonds on the Fort Lee Project;

b. 2.5% of the total amount of the payment and performance bond on the Fort Bliss Contract;

c. 3% of the total amount of Defendant's contracts with Phillips & Jordan on the Fort Lee Project.

d. Attorney's fees;

e. Pre- and Post-Judgment interest as allowed by law;

f. Costs of Court; and

g. All other relief at law or equity to which Plaintiff may show itself justly entitled.

Respectfully submitted,

COKINOS, BOSIEN & YOUNG

BY: /s/ Michael B. Lee

GREGORY M. COKINOS
Bar No. 04527250
Gmcokinos@cbylaw.com
MICHAEL B. LEE
Bar No. 12129500
OBA No. 14-139
mlee@cbylaw.com
Four Houston Center
1221 Lamar Street, 16th Floor
Houston, Texas 77010-3039
713.535.5500 Tel.
713.535.5533 Fax

ATTORNEYS FOR TEAM SYSTEMS INTERNATIONAL, LLC

OF COUNSEL
MULINIX, OGDEN, HALL & LUDLAM, PLLC
ARMANDO ROSELL
OBA No. 18821
rosell@lawokc.com
3030 Oklahoma Tower
210 Park Avenue
Oklahoma City, Oklahoma 73102
405.232.4800 Tel
405.232.8999 Fax