IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TEAM SYSTEMS INTERNATIONAL, LLC, | ) ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. CIV-14-1018-D |
| | ) | |
| JEFF HAOZOUS, ALSO KNOWN AS JEFF HOUSER, INDIVIDUALLY, AND AS PRESIDENT OF FORT SILL APACHE INDUSTRIES AND CHIEF EXECUTIVE OFFICER OF FORT SILL APACHE INDUSTRIES BOARD OF DIRECTORS, *et al.*, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Before the Court is Defendants' Motion to Dismiss [Doc. No. 19], filed pursuant to

Fed. R. Civ. P. 12(b)(1) and (b)(6) and Fed. R. Civ. P. 17(b).  Plaintiff has timely opposed

the Motion, which is fully briefed.

**Factual and Procedural Background**

Plaintiff Team Systems International, LLC commenced this breach of contract action

against Jeff Haozous, also known as Jeff Houser, individually and in various representative

capacities; Fort Sill Apache Business Committee; Fort Sill Apache Industries ("FSAI") and

its board of directors; and the Fort Sill Apache Casino, now known as Apache Casino Hotel.

Upon initial examination of the Complaint, the Court found insufficient factual allegations

to establish diversity jurisdiction under 28 U.S.C. § 1332(a), which was asserted as the basis

of federal subject matter jurisdiction.  *See* Compl. ¶ 3.  Plaintiff was ordered to file an

amended complaint within 14 days.  *See* Order of Sept. 23, 2014 [Doc. No. 7].  Plaintiff

subsequently filed a First Amended Complaint and a Second Amended Complaint attempting

to cure the deficiencies identified by the Court, including that a suit against a tribal official

and tribal entities was an action against the Fort Sill Apache Tribe and "'Indian tribes are not

citizens of any state for purposes of diversity jurisdiction.'"  *See id.*, p.2 (quoting *Gaines v.*

*Ski Apache*, 8 F.3d 726, 729 (10th Cir. 1993)).  In permitting the filing of the Second

Amended Complaint, the Court made no determination of whether diversity jurisdiction

exists or whether the factual allegations of Plaintiff's amended pleading are sufficient to

establish complete diversity of citizenship.

Currently, the named defendants are Jeff Haozous individually and in his official

capacity as president and chief executive officer of FSAI, the board of directors of FSAI, and

FSAI.  Plaintiff alleges that FSAI is "a business entity organized under the tribal laws of Fort

Sill Apache Tribe of Oklahoma with principal offices and place of business" in Oklahoma.

*See* Second Am. Compl. [Doc. No. 12], ¶ 2.  Plaintiff states that FSAI is "sometimes called

a 'corporation' and it was formed as a business entity by internal actions of the Fort Sill

Apache Tribe and its Tribal Council.  As such, FSAI is considered to be a citizen of

Oklahoma for diversity purposes."  *Id.*  (citing the holding of *Gaines*, 8 F.3d at 729, that a

corporation chartered by a tribe "will be considered a citizen of a state for purposes of

diversity jurisdiction").  Plaintiff claims that complete diversity exists because all defendants

are citizens of Oklahoma and Plaintiff is considered to be a citizen of Florida, Virginia,

Maryland, and Texas. *See id.* ¶ 3. (citations omitted). Attachments to the Second Amended Complaint include copies of FSAI's articles of incorporation, which show it is a wholly owned corporation of the Fort Sill Apache Tribe of Oklahoma (hereafter, the "Tribe"), and the Tribe's current constitution and bylaws. *Id.*, Exs. B-C [Doc. Nos. 12-2 & 12-3].

Defendants move to dismiss the action, in part, for lack of subject matter jurisdiction. They do not challenge Plaintiff's position that FSAI is a citizen of Oklahoma but, instead, contend it is entitled to sovereign tribal immunity and all other defendants (who are alleged to be alter egos of FSAI) enjoy the same immunity. Plaintiff alleges, and argues in opposition to the Motion, that "Defendants have waived any rights to sovereign immunity they may otherwise have had" by an express provision of the written contract between Plaintiff and FSAI. *See* Second Am. Compl. [Doc. No. 12], ¶ 14.

As to the board of directors of FSAI, Defendants contend that the board is not an entity subject to suit in its own name, apart from FSAI, and that this putative defendant should be dismissed for lack of capacity to be sued. Plaintiff makes no response to this argument, and thus, the Court deems the issue confessed. Further, Plaintiff presents no legal authority that would permit a suit against a corporation's board of directors as a separate, suable entity under Oklahoma law, which governs this issue. *See* Fed. R. Civ. P. 17(b)(3). Defendants admit a lack of controlling precedent in Oklahoma but have presented legal authority from other jurisdictions to support their position. *See* Defs.' Mot. Dism. [Doc. No. 19], pp.13-14. The Court's research reveals persuasive authority in the arguably analogous situation of a board of education. In Oklahoma, a board of education is the

governing body of a school district (which is "a body corporate" with "the usual powers of a corporation," *see* Okla. Stat. tit. 70, § 5-105), but the board may not sue or be sued. *See Primeaux v. Ind. Sch. Dist. No. 5*, 954 F. Supp. 2d 1292, 1294-95 (N.D. Okla. 2012). Thus, the Court finds that Plaintiff's claim asserted against FSAI's board of directors should be dismissed.

As to Plaintiff's action against Chairman Haozous in his official capacity as president or chief executive officer of FSAI, the law is well settled that an official-capacity suit is treated as a suit against the entity that the official represents. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Johnson v. Board of County Comm'rs*, 85 F.3d 489, 493 (10th Cir. 1996). Thus, any claim asserted against Chairman Haozous in his capacity as an officer or manager of FSAI simply duplicates Plaintiff's claim against FSAI. Accordingly, the Court views Plaintiff's Second Amended Complaint as asserting claims against Chairman Haozous individually and FSAI.

## I.  Motion to Dismiss for Lack of Jurisdiction

### A.  Standard of Decision

"Motions to dismiss for lack of subject matter jurisdiction 'generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based.'" *City of Albuquerque v. United States Dep't of Interior*, 379 F. 3d 901, 906 (10th Cir. 2004) (citing *Ruiz v. McDonnell*, 299 F. 3d 1173, 1180 (10th Cir. 2002)). Where "the movant goes beyond the allegations in the complaint and challenges the facts upon which

subject matter jurisdiction depends . . . , the court must look beyond the complaint and has wide discretion to allow documentary and even testimonial evidence." *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Continental Carbon Co*., 428 F.3d 1285, 1292 (10th Cir. 2005); *see Holt v. United States*, 46 F. 3d 1000, 1002-03 (10th Cir. 1995). A court may consider such evidence without converting the motion to one for summary judgment under Rule 56, unless "the jurisdictional question is intertwined with the merits of the case." *Holt*, 46 F. 3d at 1003; *see Sizova v. Nat'l Inst. Standards & Tech*., 282 F.3d 1320, 1324 (10th Cir. 2002); *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000). The issues are considered to be intertwined for this purpose where "resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Pringle*, 208 F.3d at 1223; *see Sizova*, 282 F.3d at 1324.

In this case, Defendants challenge the actual facts on which subject matter jurisdiction depends, but they do not rely on additional evidence outside the Second Amended Complaint. Further, the jurisdictional issues of sovereign immunity and waiver are not intertwined with the merits of Plaintiff's claims. Therefore, the Court need not convert the Motion to one under Rule 56.

**B. Discussion**

**1. FSAI's Entitlement to Tribal Immunity**

The Tenth Circuit has held that a corporation or business entity created under tribal law may be entitled to share in the tribe's sovereign immunity under appropriate circumstances. *See Somerlott v. Cherokee Nation Distrib., Inc.*, 686 F.3d 1144, 1149 (10th

Cir. 2012).  To determine if a tribal business qualifies as a "subordinate economic entity" that enjoys sovereign immunity, the court has considered the following factors:  "(1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities."  *Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010).  The parties do not address these factors but, instead, assume FSAI would be entitled to assert sovereign immunity.

Based on FSAI's articles of incorporation, this assumption is well-founded.  FSAI was created by the Tribe's governing body, its general council, as a wholly owned corporation of the Tribe to fulfill a "duty to provide for the health, safety, morals and welfare of all persons within the jurisdiction of the Tribe."  *See* Second Am. Compl., Ex. 2 [Doc No. 12-2], § 1-020(A).  The creation of FSAI was deemed necessary to serve "an essential governmental function . . . to address serious economic, social and health problems associated with the serious unemployment and underemployment within the [Tribe], the general lack of available tribal funds . . . to address these problems, and the attendant impact upon the public health, safety, and welfare of the Tribe created by this situation."  *Id*. § 1-030(A)-(B).  The stated purposes of FSAI's organization and operation are to remedy a disproportionate unemployment rate, provide revenue for the Tribe's governmental purposes, attract private industry to the Tribe's jurisdiction, and coordinate activities with tribal leaders toward the Tribe's goal of repatriation to sacred homelands in New Mexico and Arizona.  *Id*. § 1-040.

FSAI and the Tribe share a common management; the officers of FSAI and the Tribe's business committee are the same. *Id.* § 1-100. FSAI's board of directors consists of the members of the Tribe's business committee, with the elected chairman serving a concurrent term as FSAI's president, the vice-chairman as FSAI's vice-president, and the secretary treasurer having the same role for FSAI. *Id.* § 1-070. An intent to share the Tribe's sovereign immunity is reflected in provisions regarding waiver of such immunity, discussed *infra*, and declaring FSAI's property to be public property not subject to attachment, lien, execution, or judicial process. *Id.* §§ 1-170, 1-320, 1-330. While the financial relationship between FSAI and the Tribe is not expressly defined in the articles of incorporation, according to the allegations of Plaintiff's pleading, FSAI and other unspecified tribal entities frequently commingled funds and accounts, and Chairman Haozous and FSAI's directors once diverted federal funds received by the Tribe to purchase a letter of credit for FSAI. *See* Second Am. Compl. [Doc. No. 12], ¶ 17.

The parties focus on the alleged waiver of immunity contained in the written contract between Plaintiff and FSAI. The contract or "Engagement Agreement" contains a choice-of-law provision that includes the following sentence: "By this Article 12 FSAI specifically agrees that the defense of sovereign immunity from suit is waived for itself and enforcement of this Agreement and that FSAI may be sued in a court of competent jurisdiction for the enforcement and performance of this Agreement and submits to the choice of law and forum set forth herein." *See* Second Am. Compl., Ex. 1 [Doc. No. 12-1], § 7.5. Despite the clarity

of this statement, Defendants contend it "makes no sense as written" because it refers to Article 12 but appears under Article VII of the Engagement Agreement.

The Court rejects Defendants' argument. Oklahoma law, which by the terms of the contract governs its validity, construction, scope and performance, clearly holds that a contract is ambiguous only "if it is reasonably susceptible to at least two different constructions." *Pitco Prod. Co. v. Chaparral Energy, Inc*., 63 P.3d 541, 545-56 (Okla. 2003); *see BP America, Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832, 836 (Okla. 2005). "The test for ambiguity is whether the language 'is susceptible to two interpretations on its face . . . from the standpoint of a reasonably prudent lay person, not from that of a lawyer.'" *American Econ. Ins. Co. v. Bogdahn*, 89 P.3d 1051, 1054 (Okla. 2004) (quoting *Cranfill v. Aetna Life Ins. Co*., 49 P.3d 703, 706 (Okla. 2002)); *see Dodson v. St. Paul Ins. Co*., 812 P.2d 372, 376-77 (Okla. 1991). The contractual provision at issue in this case is not susceptible to any construction other than what it states:   FSAI expressly agreed "that the defense of sovereign immunity from suit is waived for itself and enforcement of [the Engagement] Agreement and that FSAI may be sued in a court of competent jurisdiction for the enforcement and performance of this Agreement." *See* Second Am. Compl., Ex. 1 [Doc. No. 12-1], § 7.5.

Defendants also argue that Plaintiff has not established that there was proper authority to execute the waiver. However, the Agreement was signed on behalf of FSAI by Don Wauahdooah, who is identified in the Agreement as FSAI's "CEO/President." *See id*. § 7.9. Further, FSAI's articles of incorporation expressly authorize it to waive sovereign immunity.

8

They contain the following provision in a section regarding the power to sue and to be sued: "FSAI may be sued, in limited circumstances, in the Tribal court or a court of competent jurisdiction, in its own name upon any contract or obligation arising out of its activities within the Tribal jurisdiction under this act and the immunity from suit which it has as an agency of the Fort Sill Apache Tribe of Oklahoma due to the doctrine of sovereign immunity is hereby expressly waived for such purposes to the extent herein stated." *See* Second Am. Compl., Ex. 2 [Doc. No. 12-2], § 1-170(B).  The articles give FSAI broad general powers to make agreements or contracts and "enter into partnerships, joint ventures, and other business arrangements with any legal entity to effectuate the purposes of the corporation." *See id*. § 1-180(B), (N).  Accordingly, the Court finds no basis to suggest that the waiver of sovereign immunity in the Engagement Agreement was unauthorized.

### 2.      Chairman Haozous's Entitlement to Tribal Immunity

Defendants assert that Plaintiff's suit against Chairman Haozous individually is also barred by tribal immunity.  The Court disagrees.

Plaintiff seeks to recover money that it allegedly is entitled to receive for services provided to FSAI in connection with certain construction projects.  Plaintiff allegedly secured financing in the form of payment and performance bonds and introduced FSAI to a strategic partner, that is, the primary subcontractor on the construction project.  A suit for "money damages from an [agent or official of a sovereign] 'in his individual capacity for . . . wrongful conduct fairly attributable to the officer himself'" is not barred by sovereign immunity "'so long as the relief is sought not from the sovereign's treasury but from the

officer personally.'" *Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1297 (10th Cir. 2008) (quoting *Alden v. Maine*, 527 U.S. 706, 757 (1999)).  Thus, sovereign immunity would not bar Plaintiff's claim for damages against Chairman Haozous individually so long as the damages are assessed against him personally.

However, the Second Amended Complaint also includes "alter ego" allegations.  Although the purpose of these allegations is unclear, they are apparently intended to impose liability on tribal officers for actions of FSAI.  In substance, the allegations state that "the Fort Sill Defendants regularly and consistently maintained common officers and directors, that Jeff Houser was the titular head of all the entities and ran them without regard to corporate separation, that they commingled funds and accounts, as well as operations, and they utilized the fund of one for the debts or trade acquisitions of another, . . . and that there generally was such a blurring of all of their identities that separate entities simply did not exist or function."  *See* Second Am. Compl. [Doc. No. 12], ¶ 17.  Although the term "Fort Sill Defendants" is not defined in the Second Amended Complaint,[1] the two "entities" that were allegedly operated as one with common officers must necessarily refer to FSAI and the Tribe.  To the extent Plaintiff is attempting by its alter ego theory to impute FSAI's liability under the Engagement Agreement to the Tribe or to Chairman Haozous as an officer or agent of the Tribe, this attempt is barred by sovereign immunity.  Plaintiff does not allege any facts to establish that the Tribe has waived its immunity.  Thus as to Chairman Haozous, the Court

---

[1]  In the Original Complaint, it was defined to include all named defendants, including Chairman Haozous in his official capacity, the Tribe's business committee, and the Tribe's casino.  In the First Amended Complaint, it was also defined to include the business committee and the casino.

considers only the question of whether the Second Amended Complaint sufficiently states a claim against him individually.

### 3.  Conclusion Regarding Jurisdiction

For these reasons, the Court finds that it has subject matter jurisdiction over Plaintiff's claims against FSAI and Chairman Haozous in his individual capacity.

## II.  Motion to Dismiss for Failure to State a Claim

### A.  Standard of Decision

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  In assessing plausibility, a court should first disregard conclusory allegations and "next consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681.

**B.  Discussion**

**1.  Chairman Haozous Individually**

The claim asserted in the Second Amended Complaint is one for breach of contract. Chairman Haozous was not a party to the Engagement Agreement, and Plaintiff does not explain any basis of personal contractual liability.[2]  If some theory of recovery other than breach of contract were stated, Plaintiff fails to allege any facts to show that Chairman Haozous personally engaged in any wrongful act with regard to Plaintiff or its work under the Engagement Agreement.  The Court recognizes that Plaintiff alleges generally that it terminated the contract because FSAI engaged in certain conduct, such as blocking Plaintiff's access to financial information needed to perform its accounting tasks.  *See* Second Am. Compl. [Doc. No. 12], ¶ 9.  Plaintiff alleges "upon information and belief that FSAI, [Chairman Haozous], and the Fort Sill Apache Industries Board of Directors, as Managers, engaged in these actions in bad faith so as to create or force the termination of the Engagement Agreement shortly before it would have expired naturally in order to try to avoid paying [Plaintiff] its just compensation."  This conclusory allegation is insufficient to show that Chairman Haozous personally participated in any wrongful or tortious conduct.

---

[2]  In its brief, Plaintiff argues that Chairman Haozous may be liable for his tortious conduct, which "arguably would include the bad faith, tortious breach of the Agreement caused by Mr. Haozous."  *See* Pl.'s Resp. Br. [Doc. No. 21], p.11-12.  Plaintiff provides no legal authority for the proposition that Oklahoma law recognizes such a tort with regard to a commercial contract.  The lone citation of authority, *Robinson v. Southerland*, 123 P.3d 35, 44 (Okla. Civ. App. 2005), expressly states that Oklahoma "courts have generally refused to recognize a cause of action for breach of the contractual implied duty of good faith outside the bounds of the insured/insurer and employer/employee relationships."

Therefore, the Court finds that Plaintiff has failed to state a claim on which Chairman Haozous could be held personally liable.

### 2.  FSAI

Defendants contend that the facts alleged by Plaintiff fail to show a breach of the Engagement Agreement because Plaintiff was promised contingent compensation only if FSAI received "financing" from a "financing source" introduced by Plaintiff or if FSAI reached an agreement with a "strategic partner" introduced or developed by Plaintiff; the latter compensation might "include a participation in ongoing revenues received from the activities of the strategic partnership." *See* Second Am. Compl., Ex. 1 [Doc. No. 12-1], app. 1 (p. 14 of ECF numbering).   Defendants argue that the surety bonds Plaintiff allegedly obtained for FSAI do not constitute "financing" and that the primary subcontractor on the construction project was not a "strategic partner" of FSAI.[3]  Plaintiff disagrees with these contentions, but presents no legal authority for its position.

The Oklahoma Statutes provide rules of contract interpretation.  *See Kerr-McGee Corp. v. Admiral Ins. Co*. 905 P.2d 760, 763 (Okla. 1995).  "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."  Okla. Stat. tit. 15, § 154. "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in

---

[3]  Defendants also assert that this action is time-barred by the applicable statute of limitations, but the Court finds no need to reach this issue.

which case the latter must be followed." *Id.* § 160. "Technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense." *Id.* § 161. "If language of a contract is clear and free of ambiguity the court is to interpret it as a matter of law, giving effect to the mutual intent of the parties at the time of contracting." *Pitco Production Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 545 (Okla. 2003) (footnotes omitted). The question of whether a contract is ambiguous is also a matter of law for the courts. *Id.*; *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991).

Plaintiff does not contend the terms "financing" and "strategic partner" as used in the Engagement Agreement have any technical or special meaning. Thus, the Court will read them in the context of the contingent compensation provision of the parties' contract according to their common and ordinary meaning. The parties do not contend there is any ambiguity in the contingent compensation provision of the contract, and the Court finds none.

"Financing" means "the act or process or an instance of raising or providing funds; *also*: the funds thus raised or provided." *See* Webster's New Collegiate Dictionary (available at http://www.merriam-webster/dictionary/financing). The term connotes "obtaining or furnishing money or capital for a purchase or enterprise" or "funds or capital provided by investors or lenders." *See* http://dictionary.reference.com/browse/financing?s=t; http://www.thefreedictionary.com/ financing (both last accessed April 28, 2015). In contrast, performance and payment bonds are surety bonds that ensure contract completion in the event of a default; a payment bond "[e]nsures suppliers and subcontractors are paid for work

performed under the contract," and a performance bond "[e]nsures the contract will be completed in accordance with the terms and conditions of the contract."  *See* www.sba.gov/content/surety-bonds-basics (last accessed April 28, 2015).  By definition, the bonds do not raise capital or provide funding for a business project; they merely guarantee that payment or performance will be made during the project.  Thus, Plaintiff's allegations that it worked on behalf of FSAI to secure payment and performance bonds for two projects, if accepted as true, do not show that FSAI obtained financing from a financing source as a result of Plaintiff's efforts.  The Second Amended Complaint therefore fails to state a plausible claim that Plaintiff is entitled to contingent compensation on this basis under the Engagement Agreement.

The term "strategic partner" is a business term meaning a party "with which a long-term agreement is reached for sharing of physical and/or intellectual resources in achievement of a common objective."  *See* http://www.businessdictionary.com/definition/strategic-partner.html (last accessed April 28, 2015).  A strategic partnership is "a type of contractual alliance between two commercial enterprises that is not a formal legal partnership."  *See* http://dictionary.reference.com/browse/strategic+partnership (last accessed April 28, 2015).  The party alleged to be a strategic partner of FSAI was the primary subcontractor on one project, Phillips & Jordan, Inc.  Plaintiff allegedly introduced this company to FSAI, provided project references it required, and assisted it in securing a bond package.  The only factual allegation regarding the relationship between FSAI and Phillips & Jordan, Inc. is that they "entered into a lump sum contract" for two phases of the  project.

*See* Second Am. Compl. [Doc. No. 12], ¶ 8.  Plaintiff provides no factual basis from which to conclude that the two entities formed a long-term agreement for sharing of resources or entered into any contractual alliance between enterprises.  Thus, the Second Amended Complaint also fails to state a plausible claim that Plaintiff is entitled to contingent compensation for introducing FSAI to a strategic partner.

For these reasons, the Court finds that Plaintiff's factual allegations are insufficient to state a breach of contract claim based on FSAI's failure to pay Plaintiff contingent compensation allegedly due under the Engagement Agreement.

## Conclusion

For these reasons, the Court finds that it has subject matter jurisdiction over Plaintiff's action against FSAI and Chairman Haozous in his individual capacity but that the Second Amended Complaint fails to stat a plausible claim against these defendants.  The other remaining defendant, FSAI's board of directors, is not a suable entity.  The Court further finds no basis to grant Plaintiff further leave to amend its pleading.[4]

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss [Doc. No. 19] is GRANTED.  A separate judgment of dismissal shall be entered.

---

[4] "Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave."  *Burnett v. Mortgage Electronic Registration Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013) (citing *Calderon v. Kansas Dep't of Soc. & Rehab. Svcs.*, 181 F.3d 1180, 1185-87 (10th Cir. 1999); *Glenn v. First Nat'l Bank*, 868 F.2d 368, 371 (10th Cir. 1989).  Further, "[a] dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).  Here, Plaintiff's core factual allegations have remained essentially unchanged through two amendments, and those facts do not state a plausible claim on the theories of liability advanced by Plaintiff.

IT IS SO ORDERED this 7th day of May, 2015.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE