IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TEAM SYSTEMS INTERNATIONAL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> JEFF HAOZOUS, ALSO KNOWN AS JEFF HOUSER, INDIVIDUALLY, AND AS PRESIDENT OF FORT SILL APACHE INDUSTRIES AND CHIEF EXECUTIVE OFFICER OF FORT SILL APACHE INDUSTRIES BOARD OF DIRECTORS, *et al.* <br><br> Defendants. | Case No. CIV-14-1018-D |

**PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e)
<u>AND BRIEF IN SUPPORT</u>**

Plaintiff, Team Systems International, LLC ("TSI"), respectfully moves this Honorable Court to amend its May 7, 2015, Order (Doc. No. 31) (the "Order") and Judgment entered thereon (Doc. No. 32) (the "Judgment"), granting defendant Fort Sill Apache Industries' ("FSAI") Motion to Dismiss ("MTD") (Doc. No. 19), pursuant to Federal Rule of Civil Procedure ("Rule") 59(e). In support thereof TSI states, as follows:

### INTRODUCTION

TSI moves this Court to reconsider its ruling dismissing TSI's complaint against FSAI under Rule 12(b)(6), and to amend its judgment to deny FSAI's MTD. The purpose of Rule 59 is to correct an error in the judgment and to prevent manifest injustice. Here,

TSI alleges a contractual relationship with FSAI under an Engagement Agreement[1] pursuant to which TSI performed valuable business services for FSAI. Neither party disputes the existence of the agreement or the performance of services under it; the only issue is whether such services fall under the agreement's provision for contingency-based compensation or some other form and amount of compensation.

Amendment of the Court's order and judgment is warranted because the Court misinterpreted the Engagement Agreement to exclude TSI's work from the contingency-based compensation provisions. In doing so, the Court narrowly construed the agreement's terms in a manner inconsistent with its other provisions and purpose. The terms at issue – "financing" and "strategic partner" – have extremely broad common meanings, and the agreement's other provisions clarify those terms to include the payment bonds and business relationships TSI facilitated for FSAI, without which FSAI could not obtain the government contracts.

At a minimum, the terms are broad enough to reasonably encompass such services and thus require extrinsic evidence of the parties' custom and usage to ascertain their technical meaning and the parties' intent. Some evidence of that custom and usage already exists, as FSAI's former president (when the parties entered into the Engagement Agreement) testified TSI's services are subject to the contingency compensation.

Accordingly, the Court should amend its May 7, 2015 Order and deny FSAI's motion to dismiss TSI's complaint. Alternatively, the Court should grant TSI leave to

---

[1] Attached to TSI's Second Amended Original Complaint (Doc. No. 12) (and also appended hereto) as **Exhibit 1**.

amend its complaint to allege additional facts regarding the parties' custom, usage and technical meaning of the agreement's terms.

## ARGUMENT

I. **The Court Misinterpreted the Engagement Agreement Language, Construing its Terms Too Narrowly and Contrary to the Agreement's Other Language and Purpose as a Whole**

"A Rule 59(e) motion is the appropriate vehicle to correct manifest errors of law[.]" *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1199 (10th Cir. 2011) (internal quotations omitted).[2] Grounds for granting a Rule 59(e) motion also include "the need to correct clear error or prevent manifest injustice." *Somerlott v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144, 1153 (10th Cir. 2012).

The Court dismissed TSI's complaint solely based on its interpretation of two terms in the Engagement Agreement – "financing" and "strategic partner." (Order at 14-16). Respectfully, the Court misinterpreted these terms. Construing the Engagement Agreement as a whole necessarily includes recognizing that the payment/performance

---

[2] The Court has jurisdiction to consider this Rule 59 motion, notwithstanding the Notice of Appeal and Corrected Notice of Appeal ("Notices") filed May 28, 2015. The judgment was entered on May 7, 2015, making Rule 59 motions due within 28 days thereafter, or by June 4, 2015. Fed. R. Civ. P. 59. The previously filed Notices do not divest this Court of jurisdiction over this timely-filed Rule 59 motion. *See* Fed. R. App. P. 4(a)(4)(A) ("[i]f a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion: ... (iv) to alter or amend the judgment under Rule 59"); *see also Id.* at Note to Para. (a)(4) of 1993 Amendment ("[a] notice filed before the filing of one of the specified motions or after the filing of a motion but before disposition of the motion is, in effect, suspended until the motion is disposed of, whereupon, the previously filed notice effectively places jurisdiction in the court of appeals").

3

bonds and primary subcontractor arrangement that TSI procured for FSAI, fall within the broad meaning of "financing" and "strategic partner," respectively.

The rules of contract interpretation are well-known. "A contract must be ... interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful. Okla. Stat. tit. 15, § 152. To this end, contract terms "are to be understood in their ordinary and popular sense ... unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." *Id.* at § 160. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." *Id.* at § 157. "Particular clauses are subordinate to its general intent." *Id.* at § 166. "Technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense." *Id.* at § 161.

Here, the Court ascribed an unduly narrow meaning to the word "financing" in the Engagement Agreement, based solely upon selected definitions in certain reference materials. (Order at 14). In doing so, the Court unnecessarily limited the meaning to "capital funding for a purchase or enterprise" received from "investors or lenders." (Order at 14). However, Merriam-Webster's Online Dictionary (cited by the Court) never narrows the meaning of "financing" to such a limited degree and category of sources. In fact, Merriam-Webster's simply defines "financing" as "the act or process or an instance of raising or providing funds; *also*: the funds thus raised or provided." *See* http://www.merriam-webster/dictionary/financing (last accessed June 4, 2015). And,

4

unlike Merriam-Webster's definition, other authorities more specific to business transactions recognize an even broader use of the term by defining it simply as "the act of providing money for a project." *See* http://www.businessdictionary.com/definition/financing (last accessed June 4, 2015).

The Court's narrow focus on funds deriving solely from investment or lending sources/entitles, and solely to provide "capital funding for a purchase or enterprise," overlooks the broad meaning of "financing" that is reflected, for example, in the Merriam-Webster definition and thus resulted in the Court discounting the financial component of the payment and performance bonds.

Indeed, a payment bond is a contractual obligation to provide funds for a project, *i.e.*, "an undertaking by which a surety agrees to ***compensate subcontractors and suppliers*** who have furnished labor or supplies to the surety's 'principal' (often a general contractor)[.]" *Travelers Cas. and Sur. Co. v. Dormitory Auth.-State of N.Y.*, 734 F.Supp.2d 368, 373 n.7 (S.D.N.Y. 2010) (emphasis added). Similarly, a performance bond "is an undertaking by which a surety agrees to be ***financially responsible to the owner*** of a construction project if that surety's principal fails to fulfill its contractual obligations to the owner." *Id.* (emphasis added). Consequently, both bond types "provide money for a project" within the broad meaning of "financing" under the Engagement Agreement – albeit not from investor or loan sources, but as financial guarantee instruments required for FSAI to obtain and complete the Fort Lee project.

Other provisions of the Engagement Agreement confirm this broad meaning. The agreement generally describes TSI's "scope of services" as providing, among other

5

things, "project development" and "effective financial strategies." (Ex A., Appx. I, at p. 1). The agreement further provides that TSI will not be responsible for fees payable to "underwriters or agents ... utilized or retained by [FSAI] in connection with ... the Financing." (*Id.* at p. 2). The Court must interpret these provisions to give meaning to the term "financing" in the Engagement Agreement as a whole. Okla. Stat. tit. 15, § 166. Payment and performance bonds certainly fall within the broader category of "financial strategies," particularly where the agreement expressly contemplates the use of "underwriters or agents" in connection with such financing. Narrowly construing "financing" to exclude payment and performance bonds would impermissibly render that language wholly meaningless. *Id.* at § 157 ("[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others"); *Lewis v. Sac and Fox Tribe of Okla. Housing Auth.*, 896 P.2d 503, 514 (Okla. 1994) ("[a] contract must be considered as a whole so as to give effect to all its provisions without narrowly concentrating upon some clause or language taken out of context"). Simply put, no need would exist to preclude TSI's liability for underwriter fees incurred in connection with the "financing" if that term already excluded surety bonds.

Similarly, the Court unnecessarily limited the term "strategic partner" as used in the Engagement Agreement to include only a "long-term agreement for sharing of resources or enter[ing] into [a] contractual alliance between enterprises." (Order at 15-16). Contrary to the Court's cited reference source, various other sources define that term much more broadly. For example, one source defines it simply as "an arrangement

6

between two companies or organizations to help each other or work together, to make it easier for each of them to achieve the things they want to achieve." *See* http://dictionary.cambridge.org/us/dictionary/business-english/strategic-partnership (last accessed June 4, 2015). Another business authority defines "strategic partner" as "another business with whom you enter into an agreement that aims to help both of you achieve more success." *See* http://www.forbes.com/sites/davelavinsky/2013/04/02/does-your-business-have-strategic-partners-why-not (last accessed June 4, 2015). Still another source defines it as "a type of contractual alliance between two commercial enterprises that is not a formal legal partnership." *See* http://dictionary.reference.com/browse/strategic+partnership (last accessed June 4, 2015).

And taken separately, the words "strategic" and "partner" are equally broad. "Strategic" means "[i]mportant or essential in relation to a plan of action." *See* http://www.thefreedictionary.com/strategic (last accessed June 4, 2015). "Partner" simply means "[o]ne that is united or associated with another or others in an activity[.]" *See* http://www.thefreedictionary.com/partner (last accessed June 6, 2015).

Here, TSI alleges it entered into the Engagement Agreement, in part, "to engage in project business development on behalf of FSAI." (Sec. Am. Orig. Compl. at ¶5). In furtherance of that, TSI alleges FSAI required TSI's services because it "had the connections to create ***teaming agreements with primary contractors*** for the performance of ... government contracts." (*Id.*) (emphasis added). TSI thus could provide "the project business development necessary to bring in new contracts." (*Id.*) As a result, TSI procured Phillips & Jordan, Inc. ("P&J") as the primary subcontractor on the Fort Lee

7

project, which was essential to the success of the Fort Lee Project. (*Id.* at ¶ 8). This constitutes a "strategic partner" under the broad meaning of that term in the Engagement Agreement.

II. **Alternatively, the Engagement Agreement's Terms are Broad Enough to Reasonably Encompass Procurement of the Payment/Performance Bonds and P&J Contract and thus be Subject to Extrinsic Evidence of the Parties' Custom and Usage to Ascertain Their Meaning**

A. **Dismissal is inappropriate to the extent the broad meaning of the Engagement Agreement's terms requires evidence of the parties' custom and usage**

Oklahoma law is clear that contract terms "are to be understood in their ordinary and popular sense ... *unless* used by the parties in a technical sense, or *unless* a special meaning is given to them by usage, in which case the latter must be followed." Okla. Stat. tit. 15, § 160 (emphasis added). "Words which are technical or ambiguous on their face, or foreign or peculiar to the sciences or arts, or to particular trades, professions, occupations or localities are explainable where they are employed in written instruments by parol evidence of usage[.]" *Pub. Serv. Co. of Okla. v. Home Builders Ass'n of Realtors, Inc.*, 554 P.2d 1181, 1185 (Okla. 1976).

As established above, the operative Engagement Agreement terms are, at a minimum, broad enough to reasonably encompass TSI's claims and thus subject to parol evidence of the parties' custom, usage and intent. And such evidence exists here. Specifically, Don Wauahdooah, FSAI's president when the parties executed the Engagement Agreement, executed a sworn declaration in support of TSI's claims, wherein he testified that:

8

> 4. I say without reservation that I know that between the signing of the Agreement and at least 2007 when I left FSAI, TSI performed its responsibilities under the Agreement and was entitled to be paid its contingency or success fees in percentages set out in the Agreement for those bonds and for securing the involvement of Phillips & Jordan, Inc., as the "Designated Subcontractor;" in fact, I declare that without those bonds and the involvement of Phillips & Jordan, FSAI would never have gotten the Fort Lee Project at all;
>
> 5. Again, the contingency percentages and FSAI's obligations to pay such contingency percentages were all approved by myself and also by the FSAI Board of Directors and the Fort Sill Apache Tribe Business Committee ...

(*See* Decl. of Don Wauahdooah at ¶¶ 4-5, attached hereto as **Exhibit 2**).[3]

The Engagement Agreement also contemplates TSI providing "additional services in connection with the project" and paid for under the contingency compensation provisions in Appendix I. (Ex. A at §§ 2.1.6, 6.1.2). In prior litigation involving the same parties and the Engagement Agreement, both Wauahdooah and defendant Jeff Houser testified similarly as to contingency compensation for all business development under the Engagement Agreement:

> Q: Mr. Wauahdooah, can you give us your – what your understanding of the term "project" was?
>
> A: It could mean anything. It was no specific project in mind identified as a project. It meant that if we were continuing this, a project would become whatever we were associated with at, at any particular time frame would then link the duration of this agreement.

---

[3] Wauahdooah executed the declaration "in support of claims and arguments which [TSI] is making in the lawsuit it has brought against [FSAI] ... in Civil Action No. CIV-14-1018-D ... in the United States District Court for the Western District of Oklahoma[.]" (*Id.* at ¶ 1).

9

* * *

> But they're two separate, distinct names. There's hourly billing rate for services provided, success pay for bringing projects that benefit and fitting into the overall plan that we were generating for Fort Sill Apache Industries.

(Tr. of 12/11/12 bench trial in *Fort Sill Apache Indus. v. Mott*, No. 1:10cv1422 in the U.S. Dist. Court, Eastern Dist. of Virginia, Alexandria Div., at 498/10-14, 505/25 - 506/3, attached hereto as **Exhibit 3**).

> [Mr. Haozous]:
>
> The only place where it refers to something specific is where it says the project development fees can range from 3 percent to 7 percent.
>
> * * *
>
> My understanding was that business development was something that would be paid for on a percentage[.]"

(Tr. of 12/10/12 bench trial in *Fort Sill Apache Indus. v. Mott*, at 145:15-17, 146:1-3, attached hereto as **Exhibit 4**).

    **B.**    **The Court should grant TSI leave to amend the complaint to the extent necessary to plead facts supporting the parties' custom and usage**

"Generally, leave to amend is freely given when justice so requires." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (internal quotations omitted). Where a party moves to alter or set aside the judgment pursuant to Rule 59(e), the party may also seek leave to amend its complaint post-judgment. *Morse*, 290 F.3d at 799; *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 n.1 (5th Cir. 1981); *Halcomb v. Black Mtn. Resources, LLC*, 303 F.R.D. 496, ___ (E.D. Ky. 2014). Where a timely motion to amend

10

judgment is filed under Rule 59(e), the Rule 15 and Rule 59 inquiries turn on the same factors. *Morse*, 290 F.3d at 800. That is, permitting amendment recognizes that judgment was inappropriate in the first instance. *Dussouy*, 660 F.2d at n.1.

Here, the Court should amend its May 7 ruling to deny FSAI's MTD or, alternatively, to grant TSI leave to amend its complaint to plead facts establishing the parties' true intent in the Engagement Agreement pursuant to their custom and usage.

## CONCLUSION

Wherefore, for the reasons set forth herein, TSI respectfully requests this Court amend its Order granting FSAI's MTD to deny same. TSI further requests that the Court vacate the Judgment. If the Court does not reconsider and amend the Order so as to deny the MTD, and vacate the Judgment, TSI requests that the Court amend the Order and Judgment to grant TSI the opportunity to amend its Complaint. TSI also requests any additional relief this Court deems just and proper.

DATED this 4th day of June, 2015.

*s/ John E. Howland*
**John E. Howland, OBA No. 4416**
**ROSENSTEIN, FIST & RINGOLD**
**525 South Main, Suite 700**
**Tulsa, Oklahoma 74103**
**(918) 585-9211**
**(918) 583-5617 (facsimile)**
**ATTORNEY FOR PLAINTIFF**

OF COUNSEL:

Chip G. Schoneberger
Foster Graham Milstein & Calisher, LLP
360 S. Garfield Street, 6th Floor
Denver, Colorado  80209
Ph:  303-333-9810
Fax:  303-333-9786
cschoneberger@fostergraham.com

## CERTIFICATE OF SERVICE

☒ I hereby certify that on June 4, 2015, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Gregory M. Cokinos
Michael B. Lee
Cokinos, Bosien & Young
Four Houston Center
1221 Lamar Street, 16th Floor
Houston, Texas 77010-3039

Armando Rosell
Mulinix, Ogden, Hall & Ludlam, PLLC
3030 Oklahoma Tower
210 Park Avenue
Oklahoma City, OK 73102

Amy D. White
Phillips Murrah PC
101 N Robinson Ave
13th Fl
Oklahoma City, OK 73102

Clayton D. Ketter
Phillips Murrah PC
101 N Robinson Ave
13th Fl
Oklahoma City, OK 73102

Eugene K. Bertman
McCormick & Bryan PLLC
219 E. Main
Cleveland, OK 73069

Lyndon W. Whitmire
Phillips Murrah PC
101 N Robinson Ave
13th Fl
Oklahoma City, OK 73102

And by depositing the same in the United States Mail, First Class, postage prepaid, addressed to:

*s/ John E. Howland*
**John E. Howland**