# Fort Sill Apache Tribe

Route 2, Box 121, Apache OK 73006
Phone: (580) 588-2298
Toll Free: 1-877-826-0726
Fax: (580) 588-8133
Email: fsatsirihot@pldi.net

## FAX COVER

PLEASE FORWARD THE FOLLOWING __12__ PAGE(S)

TO: Deborah Mott

ATTENTION: _____

OFFICE PHONE: _____

FAX #: _____

FROM: Don Wauahdooah

## MESSAGE

_____

_____

_____

TSI (14 Sept 2012) 000984

**EXHIBIT 1**

09/27/2005   23:31   5095863133   FORT SILL APACHE TRI   PAGE   02

# Team Systems International, LLC

Mr. Don Wauahdooah
Fort Sill Apache Industries
Route 2 Box 121
Apache, Oklahoma 73006

RE:   Initial Installation of Computerized DFARS Compliant
      Financial Accounting System for FSAI: Firm Fixed Price Proposal

Dear Mr. Wauahdooah:

Team Systems International (TSI) is pleased to provide this FFP proposal for the initial installation of a FAR compliant cost accounting system for the Fort Sill Apache Industries. Please note that this estimate includes the use of software, hardware and all accounting services for the initial organization of the FSAI financial books and records.

Product or Service                                                          Total Price
1. New Company License for Wind2 Financial Management System............. $1000.00
   (software owned by TSI)
2. Controller time to set up the new company in Wind2 FMS (10 hours @ $100/hr) (New Chart of
   Accounts, and all required data input)....................................... $1000.00
3. One Order Printed Laser Checks - compatible with Wind2FMS................ $ 125.00
4. Other Office Supplies - folders, labels, paper, etc....................... $  50.00
                                                                    TOTAL $2175.00

This estimate is in addition to the services defined in the existing consulting agreement between FSIA and TSI. I have attached a technical description of the financial accounting system for your review.

Please feel free to contact me if you have questions.

Kind Regards,

*[signature]*
Deborah Evans Mott
Principal

*[signature: Approved 9/8/05]*
*[signature: Don Wauahdooah]*

Fountain Square Center • 11921 Freedom Drive • Suite 550 • Reston, VA 20190
Phone 703.834.6626 • Fax 703.760.9509 • www.tsi-us.net

TSI (14 Sept 2012) 000985

TSAI Engagement Agreement
1 August 2005

# TEAM SYSTEMS INTERNATIONAL LLC

# ENGAGEMENT AGREEMENT

This Agreement is made this 1st day of August 2005, between TEAM SYSTEMS INTERNATIONAL LLC, a Limited Liability Corporation of the State of Delaware U.S.A., having offices at 1921 Freedom Drive, STE 350, Reston, VA 20190, U.S.A., hereinafter called the "CONSULTANT", and FORT SILL APACHE INDUSTRIES, having offices at Route 2 Box 121 Apache, Oklahoma 73006, hereinafter called the "CLIENT"

WHEREAS, the CLIENT desires to engage the CONSULTANT to conduct financial accounting and advisory services for the Client's sole and primary books and records.

NOW, THEREFORE, the parties hereto, in consideration of their in mutual covenants, herein agree as follows:

## ARTICLE I - BASIC SERVICES OF CONSULTANT

1.1     The CONSULTANT agrees to perform professional services in connection with the Project as specifically set forth in Appendix 1, attached hereto and made a part hereof.

1.2     All work shall be done in a good and professional manner.

## ARTICLE II – ADDITIONAL SERVICES OF CONSULTANT

2.1     If authorized in writing by the CLIENT, the CONSULTANT shall furnish or obtain from others Additional Services of the types listed in paragraph 2.1.1 through 2.1.6, inclusive. These services are not included as part of Basic Services, and shall be paid for by CLIENT as indicated in Article V.

   2.1.1   Preparation of applications and supporting documents for private or governmental grants, loans, or advances in connection with the Project.

   2.1.2   Service resulting from changes in the general scope, extent or character of the Project, including but not

Page 1 of 10

TSI (14 Sept 2012) 000986

09/07/2005  13:31  5955853133                FORT SILL APACHE TRI                    PAGE  04

FSAI Engagement Agreement
1 August 2005

        limited to revising previously accepted studies, reports, design documents, drawings or specifications, when such revisions are required by changes in laws, rules, regulations, ordinances, codes or orders, enacted subsequent to the preparation of such report, or are due to any other causes beyond CONSULTANT'S control.

2.1.4    Furnishing additional copies of reports in excess of those stipulated in Appendix 1.

2.1.5    Preparing to serve or serving as a consultant or witness for CLIENT in any litigation, arbitration or other legal or administrative proceeding involving the Project.

2.1.6    Additional services in connection with the project, including services which are to be furnished by CLIENT in accordance with ARTICLE III, and service not otherwise provided for in this Agreement.

## ARTICLE III - CLIENT'S RESPONSIBILITIES

The CLIENT shall do the following in a timely manner so as not to delay the services of the CONSULTANT.

3.1    Designate in writing a person to act as CLIENT'S representative with respect to the services to be rendered under this Agreement. The CLIENT or its representative shall receive and examine documents submitted by the CONSULTANT, interpret and define the CLIENT'S policies and decisions with respect to the CONSULTANT'S services for the Project, render decisions and authorizations in writing promptly to prevent unreasonable delay in the progress of the CONSULTANT'S services.

3.2    Provide all criteria and full information as to CLIENT'S requirements for the Project.

3.3    Assist CONSULTANT by placing at CONSULTANT'S disposal all available information pertinent to the Project including previous reports and any other data relative to the Project.

TSI (14 Sept 2012) 000987

09/07/2005   23:31   5805903133                FORT SILL APACHE TRI                PAGE   05

FSAT Engagement Agreement
1 August 2005

3.4  Arrange for access to and make all provisions for CONSULTANT to enter upon public and private property as required for CONSULTANT to perform services under this Agreement.

3.5  Give prompt written notice to the CONSULTANT whenever the CLIENT observes or otherwise becomes aware of any development that affects the scope or timing of CONSULTANT'S services.

3.6  Bear all costs incident to compliance with the requirements of this Article III.

3.7  Compensate the CONSULTANT for services rendered under this Agreement in accordance with Article V and Appendix 1, attached hereto and incorporated herein.

3.8  Make Full Disclosure to the CONSULTANT of all pertinent information and issues including but not limited to zoning issues or potential zoning issues. The CONSULTANT shall not be responsible for zoning board applications, costs, and/or legal fees. The CONSULTANT shall not attend zoning board meetings or assist the CLIENT in this regard.

ARTICLE IV - PERIOD OF SERVICES

4.1  The period of performance hereunder shall be set forth in Appendix 1 attached hereto and made a part hereof.

4.2  FORCE MAJEUR

Neither party hereto shall be considered in default in the performance of its obligations hereunder to the extent that the performance of any such obligation, except the payment of money, is prevented or delayed by any cause, existing or future, which is beyond the reasonable control of the affected party, or by strike, lockout or other labor difficulty, the settlement of which is not within the sole discretion of the party involved. Each party hereto shall give notice promptly to the other of the nature and extent of any FORCE MAJEUR claimed to delay, hinder or prevent performance of the services under this Agreement. In the event either party is prevented or delayed in the performance of its obligations by reason of such FORCE MAJEUR, there shall be an equitable adjustment of the schedule. FORCE MAJEUR includes the following: any cause beyond a party's reasonable control; any act of

FSAI Engagement Agreement
1 August 2005

God; any act of terror; inclement weather; weather, fire; explosion; flood; strike or other labor disputes; any shortage or disruption of or inability to obtain labor, material, manufacturing facilities, power, fuel or transportation from usual sources, or any other transportation difficulty; delay or failure to act of any governmental or military authority; any governmental or military orders to suspend projects/travel; any war, hostility or invasion; any embargo, sabotage, terror attacks, civil disturbance, riot or insurrection; any legal proceedings; or failure to act by CONSULTANT'S sub-consultants and/or suppliers due to any reasons not caused by CONSULTANT, in whole or in part.

## ARTICLE V – AGREEMENT NOT TO CLAIM FOR COST OF CERTAIN CHANGE ORDERS

CLIENT recognizes and expects that certain Change Orders may be required to be issued as the result in whole or in part of imprecision, incompleteness, errors, omissions, ambiguities, or inconsistencies in the Drawings, Specifications, and other design documentation furnished by CONSULTANT or in the other professional services performed or furnished by CONSULTANT under this Agreement ("Covered Change Orders"). Accordingly, CLIENT agrees not to sue and otherwise to make no claim directly or indirectly against CONSULTANT on the basis of professional negligence, breach of contract, or otherwise with respect to the costs of approved Covered Change Orders unless the costs of such approved Covered Change Orders exceed 25% of Cost, and then only for an amount in excess of such percentage. Any responsibility of CONSULTANT for the costs of Covered Change Orders in excess of such percentage will be determined on the basis of applicable contractual obligations and professional liability standards. For purposes of this paragraph, the cost of Covered Change Orders will not include any costs that CLIENT would have incurred if the Covered Change Order work had been included originally without any imprecision, incompleteness, error, omission, ambiguity, or inconsistency in the Contract Documents and without any other error or omission of CONSULTANT related thereto. Nothing in this provision creates a presumption that, or changes the professional liability standard for determining if, CONSULTANT is liable for the cost of Covered Change Orders in excess of the percentage of Construction Cost stated above or for any other Change Order. Wherever used in this paragraph, the term CONSULTANT includes CONSULTANT's officers, directors, partners, employees, agents, and CONSULTANT's Subcontractors.

CLIENT further agrees not to sue and otherwise to make no claim directly or indirectly against CONSULTANT with respect to any Covered Change Order not in excess of such percentage stated above, and CLIENT agrees to hold CONSULTANT harmless from and against any suit or claim made by the Contractor relating to any such Covered Change Order.

FSAI Engagement Agreement
1 August 2005

### ARTICLE VI - PAYMENTS TO CONSULTANT

6.1   For Basic Services: CLIENT shall pay CONSULTANT for Basic Services rendered under Article I (as supplemented by Appendix I) as follows:

    6.1.1   A cost plus fee of $100 per hour for monthly Controller financial accounting services and $185.00 per hour for all other services as referenced in 6.1.2 and set forth in Appendix I, attached hereto and made a part hereof for all Basic Services furnished under Article I (as supplemented by Appendix I).

    6.1.2   For Additional Services, CLIENT shall pay CONSULTANT for Additional Services rendered under Article II at the rates set forth in Appendix I.

6.2   Times of Payment

    6.2.1   CONSULTANT shall submit statements for Basic and Additional Services rendered and for all Reimbursable Expenses incurred on a monthly basis. The statements will be based on the CONSULTANT'S hourly billable time and expense record. CLIENT shall make prompt payments in response to CONSULTANT'S statements. Payments shall be made within 30 days of CLIENT'S receipt of CONSULTANT'S statements.

6.3   Other Provisions Concerning Payments.

    6.3.1   If CLIENT fails to make any payment due CONSULTANT for services and expenses within thirty (30) days after receipt of CONSULTANT'S statement therefore, the amounts due shall bear interest at the prevailing legal rate from said thirtieth day. In addition, CONSULTANT may, after giving seven (7) days' written notice to CLIENT suspend services under this AGREEMENT until CONSULTANT has been paid in full all amounts due for services, expenses and charges.

09/07/2005 THU 13:31   8885093173                    FORT SILL APACHE TRI                         PAGE 09

FSAI Engagement Agreement
1 August 2005

6.3.2   In the event of termination as provided in Article VII of this Agreement, the CONSULTANT shall be paid for all services rendered up to the date of termination, and shall be paid for all unpaid Additional Services and unpaid Reimbursable Expenses incurred up to the date of termination, and shall be paid for all termination expenses.

Case 5:14-cv-01018-D   Document 12-1   Filed 10/01/14   Page 9 of 14

FSAI Engagement Agreement
1 August 2005

## ARTICLE VII - MISCELLANEOUS PROVISIONS

7.1  **Termination.** This Agreement may be terminated by either party upon thirty (30) days' written notice in the event of substantial failure by the other party to perform in accordance with the terms hereof through no fault of the terminating party.

7.2  **Reuse of Documents.** All documents prepared by or furnished by CONSULTANT pursuant to this Agreement are instruments of service in respect of the Project. CLIENT may make and retain copies of information and reference in connection with the Project by CLIENT and others; however, such documents are not intended or represented to be suitable for reuse by CLIENT or others on modifications of the Project or on any other project. Any reuse without written verification or adaptation by CONSULTANT for the specific purpose intended will be at CLIENT'S sole risk and without liability or legal exposure to the CONSULTANT, and CLIENT shall indemnify and hold harmless CONSULTANT, its officers, directors, agents and employees from all claims, damages, losses and expenses including attorney's fees arising out of or resulting therefrom. Any such verification or adaptation will entitle CONSULTANT to further compensation at rates to be agreed upon by CLIENT and CONSULTANT.

7.4  **Insurance.** CONSULTANT shall procure and maintain the following insurance: worker's compensation and employers' liability insurance, comprehensive general liability insurance, and professional liability insurance.

7.5  **Controlling Law.** The validity, construction, scope and performance of this Agreement shall be governed by the laws of the state of Oklahoma and the United States as interpreted and applied by the United States District Court for the Western District of Oklahoma, or the United States District Court for the Eastern District of Oklahoma, whichever has comparable jurisdiction. Remedies shall include, but are not limited to injunctive relief and specific performance. By this Article 12 FSAI specifically agrees that the defense of sovereign immunity from suit is waived for itself and enforcement of this Agreement and that FSAI may be sued in a court of competent jurisdiction for the enforcement and performance of this Agreement and submits to the choice of law and forum set forth herein.

FSAI Engagement Agreement
1 August 2009

7.6  **Integration.** This Agreement represents the entire and integrated agreement between the CLIENT and the CONSULTANT and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both the CLIENT and CONSULTANT.

7.7  **Severability.** In the event any provisions of the Agreement shall be held to be invalid and unenforceable, the remaining provisions shall be valid and binding upon the parties.

7.8  **Captions.** The captions in the Agreement are for the convenience of the parties and convey no rights or obligations upon either of them.

7.9  **Notices.** Any notice required by this Agreement shall be in writing and delivered by certified or registered mail return receipt request to the following:

CLIENT: FORT SILL APACHE INDUSTRIES

Attention: Don Wahahdooah
           CEO/President
           FSAI, Inc
           Route 2, Box 121,
           Apache, Oklahoma 73006

CONSULTANT:   TEAM SYSTEMS INTERNATIONAL LLC

Attention:   Deborah Mott
             CFO, TSI LLC
             11921 Freedom Drive
             STE 550
             Reston, VA 20190

7.10  **Liability.** CONSULTANT's total liability to the CLIENT for any and all injuries, claims, losses, expenses, damages, or claim expenses arising out of this agreement from any cause or causes shall be the sum of $50,000, or the total amount of CONSULTANT's FEE for its services, whichever is less. Such causes include but are not limited to the

08/09/2005  22:91   5096693133   FORT SILL APACHE TRI   PAGE 11

FSAI Engagement Agreement
1 August 2005

CONSULTANT's negligent acts, errors or omissions, strict liability, breach of contract or breach of warranty (expressed or implied).

7.11  **Professional Practices.**  The CONSULTANT intends to render services under this agreement in accordance with the generally accepted professional practices for the intended use of the Project, and makes no warranty, either express or implied.

7.12  **Site Safety.**  CONSULTANT's site responsibilities are limited solely to the activities of CONSULTANT and CONSULTANT's employees on site. These responsibilities shall not be inferred by any party to mean that CONSULTANT has responsibility for site safety. Safety in, on, or about the site is the sole and exclusive responsibility of the contractor alone. The contractor's methods of work performance, superintendence of the contractor's employees, and sequencing of construction are also the sole and exclusive responsibilities of the contractor alone. CLIENT warrants that: 1) The contractor's responsibilities will be made clear in CLIENT's agreement with the contractor; 2) CLIENT's agreement with the contractor shall require the contractor to indemnify, defend, and hold CLIENT and CONSULTANT harmless from any claim or liability for injury or loss arising from CLIENT's or CONSULTANT's alleged failure to exercise site safety responsibility; and 3) CLIENT's agreement with the contractor shall require the contractor to make CLIENT and CONSULTANT additional insured's under the contractor's general liability insurance policy, which insurance protection shall be primary protection for CLIENT and CONSULTANT. Given the foregoing, CLIENT also shall, to the fullest extent permitted by law, waive any claim against CONSULTANT and indemnify, defend, and hold CONSULTANT harmless from any claim or liability for injury or loss arising from CONSULTANT's alleged failure to exercise site safety responsibility. CLIENT also shall compensate CONSULTANT for any time spent or expenses incurred by CONSULTANT in defense of any such claim. Such compensation shall be based upon CONSULTANT's prevailing fee schedule and expense reimbursement policy. (The term "any claim" used in this provision means "any claim in contract, tort, or statute alleging negligence, errors, omissions, strict liability, statutory liability, breach of contract, breach of warranty, negligent misrepresentation, or other acts giving rise to liability.")

09/07/2005  23:31   5055503133                    FORT SILL APACHE TEI                    PAGE  12

FSAI Engagement Agreement
1 August 2005

IN WITNESS WHEREOF, the parties have executed this Agreement by their duly authorized representatives as of the date set forth above:

(CLIENT)

ATTEST:                                           FORT SILL APACHE INDUSTRIES

_____                       By _____

(CONSULTANT)

ATTEST:                                           TEAM SYSTEMS INTERNATIONAL
LLC

_____                       By _____

Page 10 of 10

TSI (14 Sept 2012) 000995

09/07/2005  20:31  5865803193                FORT SICL APACHE TR3                    PAGE  13

## APPENDIX I

This section must contain certain items as identified in the contract, namely, the scope of services to be provided, the fee for services and the schedule of deliverables.

Scope of Services: TSI is a project development and management services firm offering creative solutions to improve asset management, lower operating costs, and execute effective financial strategies. TSI helps public and private clients budget operations either in-house or on an outsourced basis with greater control and efficiency. The firm is particularly strong in the areas of project management, government accounting and project finance.

Fee for Services:*
*All routine monthly accounting services will be provided to FSAI at fully loaded costs for $100 per hour plus expenses.

| Labor Category Offered | Commercial Price List Hourly Rate | % Discount Offered | Discounted Hourly Rate |
|---|---|---|---|
| Sr. Executive Management Consultant/Director V | $250.00 | 26% | $185 |
| Executive Management Consultant IV | $225.00 | 26% | $167 |
| Sr. Program Director / Director V | $250.00 | 26% | $185 |
| Sr. Contracts Manager/ Director V | $250.00 | 26% | $185 |
| Sr. Project Manager/Director IV | $225.00 | 26% | $167 |
| Project Manager III | $200.00 | 26% | $148 |
| Task Manager | $100.00 | 10% | $90 |
| Sr. Financial Consultant/Director V | $250.00 | 26% | $185 |
| Sr. Financial Consultant III | $200.00 | 26% | $148 |
| Sr. Financial Consultant III | $200.00 | 26% | $148 |
| Financial Consultant II | $175.00 | 26% | $130 |
| Financial Consultant I | $150.00 | 26% | $111 |
| Controller | $126.00 | 26% | $100 |
| Sr. Engineer/Director IV | $225.00 | 26% | $167 |
| Sr. Engineer III | $200.00 | 26% | $148 |
| Technical Writer II | $125.00 | 10% | $113 |
| Professional Staff Member II | $75.00 | 10% | $68 |

TSI (14 Sept 2012) 000996

05/07/2005  20:31  5005003139           FORT SILL APACHE TRI                PAGE  14

TSI's Contingent Compensation for services rendered under this engagement will include the following:

Cash fees in the amount of 250 basis points of the amount of the Financing, or alternative additional compensation as shall be mutually agreed by the parties. Should the CLIENT reach an agreement with a strategic partner(s) introduced or developed for the CLIENT by TSI as described in paragraph, then TSI shall be entitled to 300 basis points of the aggregate amount of the transaction and such additional compensation (which may include a participation in ongoing revenues received from the activities of the strategic partnership) as shall be agreed by the parties. If during the term of this engagement or within the 12 full months following the termination of this engagement (i) the CLIENT consummates one or more financings with (A) a financing source introduced to the CLIENT by TSI and/or (B) a financing source introduced to the CLIENT by a financing participant introduced by TSI, or (ii) (A) the CLIENT receives and accepts written commitments for such financing from such a source (the execution by a potential financing source and the CLIENT of a commitment letter or securities purchase agreement shall be deemed to be receipt and acceptance of such written commitment), and (B) at any time thereafter such financing is consummated with a financing source introduced to the CLIENT by TSI and/or by a financing participant introduced by TSI, the CLIENT will pay and grant to TSI upon the first closing date thereof the fees referred to in paragraphs 6(b) and 6(c); and it is further understood and agreed that if the proceeds of the Financing or any other financing described in the preceding paragraphs are to be funded in one or more stages, the aggregate proceeds of such a financing with respect to which funds have been committed to the CLIENT shall be deemed to have been received, and TSI shall be paid in full all fees referred to above, upon the first closing date thereof.

The CLIENT shall bear all legal, accounting, printing and other expenses in connection with the Structure and the Financing. It is understood that TSI will not be responsible for any fees, expenses or commissions payable to any other advisors, underwriters or agents (if any) utilized or retained by the CLIENT in connection with the Structure or the Financing. It is further understood and agreed that TSI may designate all or a portion of the cash and equity compensation payable to TSI hereunder to be made payable at the first closing date of the Financing by the CLIENT directly to employees of TSI or one or more third parties, whom TSI shall identify to the CLIENT in advance of the such closing.

As used in this Agreement, the "CLIENT" shall also include subsidiaries, affiliates, entities controlled by, controlling or under common control with the CLIENT or any of its executive officers, and entities sharing one or more executive officers of the CLIENT, and for whom no separate engagement agreement and indemnity agreement with TSI exists. The rights and obligations of the CLIENT hereunder shall apply to any successor or assign of the CLIENT or its interests under this Agreement, and to any other affiliate or newly-created entity which may be utilized to carry forward the implementation of the CLIENT's business plan as contemplated by this Agreement. Such entity shall become a party to this Agreement.

The CLIENT acknowledges and agrees that although certain individuals at TSI are lawyers and may be active members of the bar, neither such persons individually, nor TSI as an entity, is engaged in the active practice of law or rendering legal advice to the CLIENT or its officers, shareholders, owners, employees, agents or partners or to any other person or entity. TSI encourages the CLIENT to seek separate and independent legal counsel in connection with the activities contemplated hereby.

TSI (14 Sept 2012) 000997